FILED'10 FEB 05 16:17 USDC-ORM

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

MICHAEL MCNALL; and KARYL MCNALL,

       Plaintiffs,

    v.

CREDIT BUREAU OF JOSEPHINE COUNTY,
an Oregon Corporation; and CHRISTOPHER
D. MECCA,

       Defendants.

Civil No. 07-3075-CL

ORDER

CLARKE, Magistrate Judge:

      In this action, plaintiffs allege violations of the Fair Credit Reporting Act (FCRA),

violations of the Fair Debt Collection Practices Act (FDCPA), and defamation and

financial injury.  Plaintiffs seek injunctive relief, monetary damages, and costs and

expenses, including attorney fees.   This court has jurisdiction pursuant to 15 U.S.C. §

1681p and 28 U.S.C. §§ 1331 and 1367.  The parties have executed written consents to

entry of judgment by a magistrate judge (#60).  28 U.S.C. § 636(c).  Before the court is

defendant Mecca's motion for summary judgment (#66) and motion to strike (#116);

Order - 1

defendant Credit Bureau of Josephine County's (CBJC) motion for summary judgment[1]
(#70) and motion to strike (#121); plaintiffs' motion for partial summary judgment
(#102); and plaintiffs' motion for leave to file amended complaint (#106).   For the
reasons explained below, plaintiffs' motions are denied, and defendant Mecca's motion
for summary judgment is granted and defendant CBJC's motion for summary judgment is
granted in part and denied in part.

## I. <u>DISCUSSION</u>

**<u>Plaintiffs' Motion to Amend</u>**

Plaintiffs move for leave to file second amended complaint which eliminates
allegations in Count Three against defendant Mecca and Count Six against defendant
CBJC for defamation, and adds a new claim in Count Four against defendant Mecca for
violation of 15 U.S.C. § 1692g(a) .  Defendant Mecca opposes plaintiffs' motion on the
grounds the amendment will unduly delay the process and is unfair to defendant who has
filed a motion for summary judgment, and the amendment is futile.

Leave to amend should be "freely give[n]" "when justice so requires."  Fed. R.
Civ. P. 15(a)(2); <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980, 986
(9th Cir. 1999).   The court considers four factors in determining whether to allow an
amendment:  "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to
the opposing party; and (4) futility of the proposed amendment." <u>Lockheed Martin,</u> 194
F.3d at 986.

---

[1] The court denied plaintiffs' motion to strike defendant CBJC's motion for summary
judgment (#101).

Plaintiffs filed their motion on October 20, 2009, the same date they filed a response in opposition to both defendants' motions for summary judgment and their own motion for partial summary judgment.  Counsel states in his affidavit in support of the motion that, shortly after his appearance in this action in January 2009, he gave notice to defense counsel that he would be filing a motion for leave to file a second amended complaint following the completion of discovery.  Counsel states that, after completion of discovery in August 2009, he consulted with defendants' attorneys regarding the filing of the motion and they refused to consent to the filing of an amended complaint as they intended to file motions for summary judgment.

As shown in counsel's affidavit, plaintiffs' motion was filed after the close of discovery and after defendants' motions for summary judgment on all claims had been filed.  Multiple extensions of the discovery date were sought by  plaintiffs and granted by the court.  Although counsel states in his affidavit that he gave notice of his intent to file the motion to amend after the close of discovery to limit plaintiffs' claims to those that appeared to be supported by the facts, no explanation is offered for the delay in seeking leave to amend from the court after he learned from defense counsel in August 2009 that counsel would not consent to the filing of an amended complaint and learned that motions for summary judgment would be filed.  In addition, this claim against defendant Mecca was known to plaintiffs at the commencement of the case, as is shown in allegations similar to this new claim included in their original complaint.  While delay is not dispositive, it is relevant, particularly where no explanation is given for the delay. Lockheed Martin, 194 F.3d at 986.  The timing of a motion to amend after completion of

discovery and after a motion for summary judgment has been filed weighs heavily against allowing amendment.  Schlacter-Jones v. Gen. Tel. of Cal., 936 F.2d 435, 443 (9th Cir. 1991), overruled on another ground by Cramer v. Consol. Freightways, Inc., 255 F.3d 683 (9th Cir. 2001).

In addition to the untimeliness of plaintiffs' motion to amend the complaint, amendment of the complaint would be futile because, even if amendment was allowed, the new claim would be dismissed on summary judgment.[2]  See Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986) (amendment is futile if it could be defeated on a motion for summary judgment).  Plaintiffs seek leave to add a new claim in Count Four for violation of 15 U.S.C. § 1692g(a) against defendant Mecca, alleging that defendant Mecca did not provide the required notice of debt to them within five days of his June 11, 2007, initial communication with them.  15 U.S.C. § 1692g(a) provides in pertinent part that:  "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication . . . send the consumer a written notice containing [certain specified information concerning the debt]."  The court agrees with those courts which have determined that a subsequent debt collector is not required to provide additional notice and another thirty-day validation period after a

---

[2] Plaintiffs argue in their motion that amendment is not futile because Judge Panner's Order adopting the Report and Recommendation recommending that defendants' motions to dismiss claims in the first amended complaint be denied constitutes the law of the case with regard to the viability of their claims, and reconsideration of this ruling is prohibited.  Despite plaintiffs' interpretation of their proposed second amended complaint as not expanding the claims already alleged, the proposed amendment includes a new claim for violation of 15 U.S.C. § 1692g(a) against defendant Mecca in Count Four which was not alleged in the first amended complaint.

validation notice has been timely sent to the debtor.  <u>Ditty v. CheckRite, Ltd.</u>, 973 F.

Supp. 1320, 1329 (D. Utah 1997); <u>Oppong v. First Union Mortgage Corp.</u>, 566 F.

Supp.2d 395, 403-04 (E.D. Pa. 2008), <u>aff'd</u>, 326 Fed. Appx. 663 (3d Cir. 2009); <u>Nichols

v. Byrd</u>, 435 F. Supp.2d 1101, 1106-07 (D. Nev. 2006); <u>Senftle v. Landau</u>, 390 F.

Supp.2d 463, 473 (D. Md. 2005); <u>cf.</u> <u>Turner v. Shenandoah Legal Group</u>, No.

3:06CV045, 2006 WL 1685698 (E.D. Va. June 12, 2006).  Thus, even if defendant

Mecca was a "debt collector," <u>see</u> 15 U.S.C. § 1692a(6), and his June 11, 2007, letter

(#104 Campbell Aff. Ex. 3 Att.) was a "communication," <u>see</u> 15 U.S.C. § 1692a(2),

defendant Mecca's letter was not the "initial communication" about the collection of the

debt which would trigger the validation notice requirements of 15 U.S.C. § 1692g(a).

The initial communication was provided by defendant CBJC on November 9, 2006

(Paradis Aff. Ex. 4; #104 Campbell Aff. Ex. 3 Att.) which included the validation notice

language required by 15 U.S.C. § 1692g(a).

      Accordingly, because plaintiffs' motion for leave to amend is untimely and the

proposed amendment would be futile, plaintiffs' motion is denied.


### Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motions to Strike

      On the date plaintiffs filed their motion for leave to amend their complaint, they

filed a motion for partial summary judgment

> against the Defendant Christopher D. Mecca under Count Four of
> Plaintiffs' [proposed Second] Amended Complaint, for the violation of 15
> U.S.C. 1692g. . . . for the reason that the Defendant Christopher Mecca

> failed to provide the notice of debt required by 15 U.S.C. § 1692g(a)
> within five (5) days of his initial communication with the Plaintiffs on his
> attempt to collect upon the RVMC account on behalf of his client,
> Defendant CBJC.

(Pls. Mot. for Partial Summ. J. at 1-2 (footnote omitted).)  Defendants subsequently filed

motions to strike portions of plaintiffs' amended concise statement of material facts filed

in support of their motion for partial summary judgment.

Because plaintiffs' motion addresses a claim that is not at issue but was included

in a proposed second amendment complaint, which the court has not allowed, plaintiffs'

motion for partial summary judgment and the related motions to strike filed by defendants

are moot.


**Defendants' Motions for Summary Judgment**

### A. Factual Background

Construing the facts in the light most favorable to the non-movant, a review of

the record reveals the following:

Plaintiffs' son was injured when he fell off the back of an ATV being driven by

his father, plaintiff Michael McNall, at their Prospect property.  Plaintiffs' son suffered a

head abrasion.  Plaintiffs called 9-1-1and met the paramedics in Shady Cove.  Because

paramedics thought that plaintiffs' son had high blood pressure, he was transported by

helicopter to Rogue Valley Medical Center (RVMC) where he was treated.  Plaintiffs

accompanied their son to RVMC where they were told that their son was dropped when

he was being transferred from the helicopter board onto a gurney.

RVMC sent an invoice to plaintiffs dated May 29, 2006. Plaintiff Michael McNall sought additional information concerning the invoice from RVMC Billings and Records Department by telephone and letter dated July 14, 2006, including any and all documentation pertaining to the hospital stay of their son, an explanation of a number of terms contained in the invoice, and identification of hospital personnel at the time their son was received at RVMC. In followup letters dated August 17, 2006, and September 20, 2006, to RVMC Billings and Records Department, plaintiff Michael McNall notified RVMC that they had not received any of the information requested and, until the information was received, the bill would not be paid. According to plaintiff Michael McNall, he never received any response from RVMC to his letters.

On September 20, 2006, plaintiffs sent a letter to three credit reporting agencies–Equifax, Experian, and Trans Union--advising them that they fully disputed the billing from RVMC Billing Department.

RVMC assigned the debt to CBJC. CBJC sent a collection letter to plaintiffs on September 21, 2006, with regard to the account. The letter was returned as nondeliverable.

In late October 2006, CBJC requested that a credit report be run so that CBJC could determine plaintiffs' address, and one was run on November 9, 2006. On November 9, 2006, CBJC sent a letter to plaintiffs at the post office box address listed in the report. In response, plaintiffs sent a letter to CBJC dated November 14, 2006, disputing the debt and requesting documentation supporting the debt. CBJC obtained a document, "Conditions of Services Rendered" signed by plaintiff Karyl McNall, from

RVMC and, on December 26, 2006, CBJC sent this document, referred to as a "signed admissions statement" in their accompanying letter, and the May 2006 RVMC invoice, to plaintiffs. On January 22, 2007, plaintiffs responded with a letter advising CBJC that it had failed to provide certain documents and that it had violated the law by sending personal medical information without a release.

Defendant CBJC made adverse credit reporting to the three leading national credit reporting agencies--Equifax, Experian, and Trans Union--on plaintiffs as to RVMC account in January 2007, as indicated in its system.

In April 2007, CBJC sent the account to defendant Mecca for filing a lawsuit. Defendant Mecca filed a complaint against plaintiffs on behalf of CBJC.

The RVMC account appears as a collection item on several credit history reports obtained by plaintiffs dated July 2007, December 2007, and October 2008.

Defendant Mecca obtained a judgment on June 4, 2008, on behalf of CBJC against plaintiffs. Plaintiffs appealed the judgment in defendant CBJC's favor and the Oregon Court of Appeals affirmed without opinion on April 29, 2009.

According to Ms. Fauver of CBJC, public records, including outstanding judgments, are picked up by the three main reporting agencies.

Mr. Mecca never reported any information to any credit reporting agency concerning plaintiffs.

Mr. Mecca did not retain or employ the process server who served the summons and complaint in the state court collection action. The fees of the process server were paid directly by defendant CBJC.

Order - 8

## B. Legal Standards

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819

(9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).

Summary judgment should be granted for the movant, if appropriate, in the absence of

any significant probative evidence tending to support the opposing party's theory of the

case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d

991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290

(1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat

a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56,

designate specific facts which show there is a genuine issue for trial. Devereaux, 263

F.3d at 1076.

### C. Discussion

Count One - Violation of the FCRA, 15 U.S.C. § 1681s-2 - against defendant
CBJC

Plaintiffs allege in their first amended complaint that on or about September 1,

2006, prior to providing any written notice to plaintiffs, defendant CBJC furnished a

consumer reporting agency with negative information. Plaintiffs also allege that, despite

their written notice to defendant CBJC that they disputed the debt, their dispute was not

reported to any consumer reporting agencies. Defendant CBJC argues that there is no

evidence that anyone communicated anything to a credit reporting agency in September

2006 except for plaintiff Michael McNall. Plaintiffs contend that a genuine issue of

material facts exists as to when defendant commenced providing negative credit reporting

to the credit reporting agencies. Plaintiffs request that defendant's motion be denied or

that a decision be postponed under Federal Rules of Civil Procedure 56(f) so that

plaintiffs may obtain evidence from the national credit reporting agencies.

15 U.S.C. § 1681s-2 imposes certain duties on furnishers of credit information,

such as defendant CBJC.  Plaintiffs' allegations and arguments appear to implicate the

duties imposed by section 1681s-2(a) to provide information that is accurate.  Although

these affirmative duties are imposed on furnishers of credit information by subsection (a),

no private right of action exists to remedy a violation of this provision.  Instead,

subsection (a) is enforced exclusively by federal agencies and certain state officials.  15

U.S.C. § 1681s-2(c); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-

60 (9th Cir. 2002); Rollins v. Peoples Gas Light & Coke Co., 379 F. Supp.2d 964, 966-67

(N.D. Ill. 2005); Bank One, N.A. v. Colley, 294 F. Supp.2d 864, 870 (M.D. La.  2003);

Pirouzian v. SLM Corp., 396 F. Supp.2d 1124, 1127-28 (S.D. Cal. 2005).

Although a private right of action is provided for violation of section 1681s-2(b),

the reasonable investigation provision, the duties imposed on a furnisher of credit

information, such as defendant CBJC, by this subsection are triggered only upon notice of

dispute to the furnisher by a credit reporting agency, and not by notice of dispute from the

consumer.  15 U.S.C. §§ 1681s-2(c), 1681i(a)(2); Bank One, 294 F. Supp.2d at 870;

Sweitzer v. Am. Express Centurion Bank, 554 F. Supp.2d 788, 795 (S.D. Ohio 2008)

(and authorities cited); Rollins, 379 F. Supp.2d at 967; see Nelson, 282 F.3d at 1060.

Here, there is no evidence in the record that any credit reporting agency notified

defendant CBJC of a dispute regarding the completeness or accuracy of information

furnished by it to a consumer reporting agency and plaintiffs' allegations and their

arguments in opposition to defendant's motion do not implicate subsection (b).

For these reasons, plaintiffs' request for a Rule 56(f) denial or continuance is denied as moot, and defendant CBJC's motion for summary judgment is granted as to Count One.

Count Two - Violation of the FCRA, 15 U.S.C. § 1681b - against defendant CBJC

Plaintiffs allege that defendant CBJC was not entitled to a copy of their consumer credit report because they disputed the debt and because defendant did not provide validation of the debt.  Defendant CBJC contends that it requested only plaintiffs' address.

15 U.S.C. § 1681b provides that a consumer report may be furnished by a consumer reporting agency and obtained by a person only for those purposes authorized by the statute.  15 U.S.C. § 1681b(c) & (f).  The only purpose which appears relevant here is section 1681b(a)(3)(A) which provides that it is permissible to obtain a credit report with the "inten[t] to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  The Ninth Circuit interprets "collection of an account" as collection of a debt.  Hasbun v. County of Los Angeles, 323 F.3d 801, 803 (9th Cir. 2003).

Plaintiffs argue first that running a credit report to obtain their mailing address was not reasonable or necessary and was an impermissible purpose under section 1681b because in September 2006 defendant already had the RVMC invoice which shows the

correct post office box mailing address.  While the RVMC invoice includes both a street address and post office box number in the address box, plaintiffs point to nothing in the record which shows that in September 2006 when defendant was assigned the account and sent the first collection letter to plaintiffs, defendant possessed this invoice.  In fact, defendant's account notes indicate that the "itemized" and signed admissions statement were requested by defendant and received by it in December 2006 after defendant had sent the first collection letter and plaintiffs notified it that they disputed the debt.  (Fauver Dep. Ex. Q.)  Moreover, even if defendant CBJC mistakenly requested the credit report when it had plaintiffs' street address, plaintiffs offer no evidence that defendant's intent in requesting the credit report was for a purpose other than collecting a debt which is a permissible purpose under section 1681b(a)(3)(A).  See Trikas v. Universal Card Servs. Corp., 351 F. Supp.2d 37, 41-42 (E.D.N.Y. 2005) (no impermissible intent in requesting credit report when bank mistakenly believed account was open); see also Korotki v. Attorney Servs. Corp., 931 F. Supp. 1269, (D. Md. 1996) (obtaining full credit report when only address is needed does not violate FCRA), aff'd, 131 F.3d 135 (4th Cir. 1997).

     Plaintiffs also assert that section 1681b(a)(3)(A) permissible use exception does not immunize defendant at least as to plaintiff Michael McNall because plaintiff Michael McNall "had no direct involvement with the obtaining of medical services for his son at RVMC."  (Pls. Resp. at 9.)  Plaintiffs argue that there is no document signed by him showing he entered any credit transaction within the meaning of FCRA.  In making this argument, plaintiffs rely on Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106 (9th Cir. 2009), in which the Ninth Circuit addressed the phrase "a credit transaction involving" in

subsection 1681b(a)(3)(A).  Citing Andrews v. TRW, Inc., 225 F.3d 1063, 1067 (9th Cir.

2000), rev'd on other grounds by 534 U.S. 19 (2001), the Ninth Circuit determined that,

"a person is 'involved' in a credit transaction for purposes of § 1681b(a)(3)(A) where she

is 'draw[n] in as a participant' in the transaction, but not where she is 'oblige[d] to become

associated' with the transaction." Pintos, 565 F.3d at 1112-13.  The court determined that

section 1681b(a)(3)(A) "can be relied upon by the party requesting a credit report '"only if

the consumer initiates the transaction.'" Id. at 1113 (quoting Stergiopoulos v. First

Midwest Bancorp, Inc., 427 F.3d 1043, 1047 (7th Cir. 2005)).   The court found that

because Pintos had no contact with the towing company or the collection agency until her

car was towed, she did not participate in seeking credit from the towing company and did

not initiate the transaction which resulted in the collection agency requesting her credit

report.  Pintos, 565 F.3d at 1113.  The court also found that the collection agency was not

a judgment creditor indicating that a debt had been judicially established as was the case

in Hasbun, 323 F.3d at 803.  Pintos, 565 F.3d at 1113-14.  For these reasons, the Ninth

Circuit held that section 1681b(a)(3)(A) did not authorize the collection agency to obtain

the credit report on Pintos.  Id. at 1114.

       In this case, the court cannot agree that plaintiff Michael McNall did not

participate, initiate, or have direct involvement in obtaining medical services from

RVMC for his son.  The record is clear that both plaintiffs Michael McNall and Karyl

McNall sought treatment for their son at RVMC.  Plaintiff Michael McNall testified at

deposition that, while their son was being transported to RVMC by helicopter, they drove

to the hospital to meet him there.  He testified that they were approached by a nurse with

a "signature computer" and requested that one of them sign it so that their son could be treated. (M. McNall Dep. at 22-23.) The fact that plaintiff Karyl McNall signed the computer screen and not plaintiff Michael McNall is of no moment; both plaintiffs clearly initiated the transaction with RVMC and participated in seeking treatment for their son. Accordingly, defendant CBJC's request for plaintiffs' credit report in its attempt to collect the debt was permissible under the statute. Defendant CBJC's motion for summary judgment as to Count Two is granted.

Count Three - Violation of the FDCPA, 15 U.S.C. § 1692e - against defendants CBJC and Mecca

Plaintiffs allege that on or about September 2006 defendant CBJC communicated credit information known or which should be known to be false including the failure to communicate that a debt is disputed. Plaintiffs further allege that after defendant CBJC retained defendant Mecca in July 2007, defendants continued to report such negative information. Defendant CBJC contends that there is no evidence that "it was anything other than a credit reporting agency reporting what was in fact in the public's domain a lawsuit filed in Jackson County Circuit Court case number 07-1940-LI," and there is no better indicator of the fact that something is disputed than to file a lawsuit to resolve the dispute. (Def. CBJC Mem. at 3.) Defendant Mecca contends that there is no evidence that he reported anything to a credit reporting agency. Defendant Mecca also contends that there is no evidence to support plaintiffs' allegation that defendant CBJC communicated false information to a credit reporting agency. Plaintiffs contend that

defendant CBJC does not address its allegations that it reported false information because it did not report the disputed nature of the debt being reported.

15 U.S.C. § 1692e provides that a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Certain enumerated conduct constitutes a violation, including: "(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

The undisputed evidence is that plaintiffs sent a letter to defendant CBJC dated November 14, 2006, disputing the debt. The evidence shows that the lawsuit filed by defendant CBJC against plaintiffs was filed in approximately May 2007. (Fauver Dep. at 32 & Dep. Ex. Q.) Plaintiffs' evidence, which is not disputed by any evidence offered by defendant CBJC, shows that defendant CBJC made adverse credit reporting of the RVMC account to three national credit reporting agencies in January 2007. (Fauver Dep. at 37-40.) Defendant CBJC does not address this time period or offer any evidence to show that, when it reported the debt to the credit reporting agencies, it reported that the debt was disputed. See Gostony v. Diem Corp., 320 F. Supp.2d 932, 942 (D. Ariz. 2003). An issue of material fact exists as to this claim. Although it is unclear on the record whether defendant CBJC reported to the credit reporting agencies that the RVMC debt was disputed, the court notes that the record shows that plaintiffs advised the three national credit reporting agencies in a September 2006 letter that they disputed the RVMC bill. (M. McNall Dep. Ex. 4.)

Order - 16

Defendant CBJC refers to a "good faith" defense in its reply brief.  To the extent that defendant refers to the bona fide error defense of section 1692k(c),[3] this defense is an affirmative defense, <u>Clark v. Capital Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1177 (9th Cir. 2006), which has not been pleaded by defendant and, even if it were pleaded, defendant has not borne its burden of proof by offering any evidence as to its intent or procedures it had in place to prevent a violation of the FDCPA as alleged by plaintiffs.

Accordingly, for the reasons stated, defendant CBJC's motion for summary judgment as to Count Three is denied.

In their response, plaintiffs state that, because of defendant Mecca's sworn testimony, they have decided to drop any allegations against him in Count Three. Defendant Mecca's motion for summary judgment as to Count Three is granted.

<u>Count Four - Violation of 15 U.S.C. § 1692g  - against defendants CBJC and Mecca</u>

Plaintiffs allege in Count Four that they disputed the debt to both defendants, and that defendants did not validate the debt but continued to pursue collection, including filing suit, and defendants continue to report a negative collection account to a credit bureau.  Defendants each contend that defendant CBJC validated the debt as required

---

[3] 15 U.S.C. § 1692k(c) provides:  "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

after plaintiffs disputed it.  Plaintiffs respond that defendant CBJC did not reasonably investigate the account purportedly owed by plaintiffs, particularly plaintiff Michael McNall since he had not contracted to provide for the medical services; the admissions slip should not be considered as a verification of the debt; and neither defendant CBJC nor RVMC has provided any documentation which substantiates the account allegedly owed.  Plaintiffs also assert that defendant CBJC unreasonably delayed providing the verification.

It appears from plaintiffs' allegations and their response to defendants' motions to dismiss that they rely on section 1692g(b) in Count Four.  That section provides in pertinent part that, if the consumer notifies the debt collector in writing within the thirty day period referenced in subsection (a),[4] that the debt or any portion thereof is disputed, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."  It further provides that collection activities and communications that do not violate the subchapter may continue during the thirty-day period "unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed . . . ."

The Ninth Circuit in Clark, 460 F.3d at 1173-74, determined that, "At the

---

[4]  15 U.S.C. § 1692g(a)(4) provides in pertinent part that a debt collector shall, either in the initial communication with a consumer or within five days, send the consumer  a written notice containing "a statement that if the consumer notifies the debt collector in writing within [thirty days] that the debt , or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . and a copy of such verification . . . will be mailed to the consumer by the debt collector."

minimum, 'verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'" (quoting <u>Chaudhry v. Gallerizzo</u>, 174 F.3d 394, 406 (4th Cir. 1999)).  The court found that the itemized statement provided by the debt collector to the consumer there satisfied the statutory requirement that it confirm with its client the particular amount being claimed. <u>Id.</u> at 1174.  Here, the undisputed facts show that defendant CBJC obtained and sent to plaintiffs the RVMC invoice and a signed "admissions statement" signed by plaintiff Karyl McNall.  Under <u>Clark</u>, the itemized invoice alone satisfies the verification requirements of the statute.  And for the reasons explained above, the fact that the admissions statement is signed by plaintiff Karyl McNall only and not plaintiff Michael McNall does not change the analysis.  "Within reasonable limits, [a debt collector is] entitled to rely on [the] client's statements to verify the debt." <u>Id.</u> (and cases cited). Plaintiffs argue that defendant CBJC "only obtained a copy of the previously mailed RVMC invoice and the foregoing 'admissions statement,' not because the Defendant CBJC believed this was a reasonable sufficient verification of the debt, but simply because RVMC uniformly refused to provide any additional documentation to verify a debt purportedly owed to RVMC . . . ."  (Pls. Resp. at 13.)  The evidence offered by plaintiffs in this regard does not raise a triable issue of fact as to whether defendant CBJC verified the debt when requested by plaintiffs as required by section 1692g.  Further, defendant was not required to provide documentation substantiating the debt, only verification that the amount demanded by it was the amount claimed was owed by RVMC.  The FDCPA does not impose on debt collectors any duty to investigate

independently the claims presented by the creditor. <u>Clark</u>, 460 F.3d at 1174.

As to plaintiffs' argument that defendant CBJC unreasonably delayed verification, the statute only requires that the debt collector provide verification when requested in writing and that it cease collection activities until verification is obtained and mailed to the consumer. Here, there is no evidence that defendant CBJC pursued collection activities or reported the debt to any credit reporting agency before mailing verification to plaintiffs. Defendant mailed verification to plaintiffs on December 26, 2006, and the record shows that defendant reported the debt to the agencies in January 2007.[5]

For these reasons, defendant CBJC's motion for summary judgment as to Count Four is granted.

In their response, Plaintiffs do not address any argument as to Count Four as to defendant Mecca. Defendant Mecca's motion for summary judgment as to Count Four is granted.


<u>Count Five - Violation of 15 U.S.C. § 1692d - against defendants CBJC and Mecca</u>

In Count Five, plaintiffs allege that defendants' agents went to their home and in a loud voice at their entrance gate yelled certain statements which were oppressive, harassing, and abusive. Defendant CBJC contends that there is no evidence that the process server was anything other than an independent contractor and not an agent of

---

[5] The inference from the deposition testimony is that the January 2007 reporting was the "first" reporting by defendant CBJC. (Fauver Dep. at 38-40.)

defendant.  Defendant Mecca contends that, because process servers are not debt

collectors as the term is defined by the FDCPA, he is not liable to for the process servers'

actions.  Defendant Mecca further contends that it is undisputed that defendant CBJC

hired and paid the process server and, therefore, the process server is not defendant

Mecca's agent.  Defendant Mecca also contends that there is no admissible evidence that

the alleged abusive statements were made.  Plaintiffs respond that defendants' arguments

that the process server were not their agents should be rejected.  Plaintiffs argue that the

authority relied on by defendant Mecca has been limited and the statements alleged to

have been made by the process server could be found as going beyond the protected

activities of a process server under section 1692a(6)(D) exemption.

      15 U.S.C. § 1692d, relating to harassment or abuse, provides that, "A debt

collector may not engage in any conduct the natural consequence of which is to harass,

oppress, or abuse any person in connection with the collection of a debt."  Certain

conduct constituting a violation is enumerated in the statute.  Section 1692a(6) defines

"debt collector" in pertinent part as:

> any person who uses any instrumentality of interstate commerce or the
> mails in any business the principal purpose of which is the collection of
> any debts, or who regularly collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to be owed or due another. . . .
> The term does not include–
> . . . .
> (D) any person while serving or attempting to serve legal process on any
> other person in connection with the judicial enforcement of any debt.

      The Ninth Circuit has determined that "general principles of agency . . . form the

basis of vicarious liability under the FDCPA."  <u>Clark</u>, 460 F.3d at 1173.  Therefore, "to be

liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" Id. (citing Restatement (Second) of Agency § 1 (1958)).

Courts have held that a process server who acts only as a process server–a mere messenger in serving legal process–are not debt collectors and are not liable under the FDCPA. Fed. Home Loan Mortgage Corp. v. Lamar, No. 1:05 CV 1455, 2006 WL 2422903, at *8-*9 & n.3 (N.D. Ohio Aug. 22, 2006), aff'd, 503 F.3d 504 (6th Cir. 2007); Worch v. Wolpoff & Abramson, L.L.P., 477 F. Supp.2d 1015, 1019 (E.D. Mo. 2007); see Romea v. Heiberger & Assocs., 163 F.3d 111, 116-17 (2d Cir. 1998). In such circumstances, the Federal Home Loan and Worch courts also held that the debt collector and the law firm, respectively, were not vicariously liable.

However, where a process server goes beyond being a messenger while serving process or engages in prohibited harassing or abusive conduct to force the consumer to repay the debt, the process server is a debt collector and is not exempt under subsection (6)(D). Romea, 163 F.3d at 117-18 (exemption did not apply to lawyer whose involvement extended beyond mere service of notice); Flamm v. Sarner & Assocs., P.C., No. 02-4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002) (process server specifically referred to the debt while serving complaint; motion to dismiss denied); Andrews v. S. Cost Legal Servs., Inc., 582 F. Supp.2d 82, 88-89 (D. Mass. 2008) (employees of debt collector who were alleged to have prepared false and misleading documents and made demands for costs were not protected by process server exemption; motion to dismiss denied).

Here, the evidence before the court is that the process server was with a company,

Rogue Legal Process, which has a professional relationship with defendant CBJC and serves process on defendant CBJC's cases.  Defendant CBJC provides the complaint and a representative from the process server goes to defendant Mecca's office to pick it up; any instructions or addresses are normally provided by defendant CBJC.  The process service is paid directly by defendant CBJC.   (Mecca Dep. at 40-41.)  Plaintiffs offer no evidence which raises any issue of fact that defendant CBJC or defendant Mecca exercised any control over the process server.  On this record,  the process server was not an agent of either defendant CBJC or defendant Mecca, and neither is vicariously liable for the conduct of the process server.  See Fed. Home Loan Mortgage, 2006 WL 2422903, at *9 & n.3;  Worch, 477 F. Supp.2d at 1019;  cf. Alger v. Ganick, O'Brien & Sarin, 35 F. Supp.2d 148, 153 (D. Mass. 1999) (exemption does not exclude actions of debt collector who utilizes processor server to violate the FDCPA; lawyer gave instructions to process server).

       However, even if the process server was defendant's agent, there is no evidence before the court which shows that the process server went beyond the role of messenger in serving the complaint on plaintiffs.  The only evidence before the court as to what the process server did while serving plaintiffs is that he used the intercom at the entrance gate to plaintiffs' property and the statements were recorded by an answering machine.[6]  (M. McNall Dep. at 89-90.)  Plaintiffs may not rely on their complaint allegations at the summary judgment stage but must offer evidence in support of their claim that the

---

[6] Mr. McNall testified he didn't know what happened to the recording tape or digital recording.  (M. McNall Dep. at 90.)

process server made harassing and abusive statements in serving them in violation of the FDCPA.  Fed. R. Civ. P. 56(e); <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1235 (9th Cir. 1984). Plaintiffs offer no such evidence.[7]

For the reasons stated, defendants' motions for summary judgment as to Count Five are granted.

### Count Six - Defamation and Financial Injury - against defendant CBJC

Plaintiffs allege that they were defamed because defendant CBJC reported a credit history to a credit bureau inaccurately.  In their response to defendants' motions, plaintiffs assert that the motion is moot because they have decided to dismiss this claim.

Because plaintiffs have dismissed this claim only after defendant CBJC filed its motion for summary judgment, defendant's motion as to Count Six is granted.

## IV. <u>ORDER</u>

Based on the foregoing, it is ordered that plaintiffs' motion for leave to file amended complaint (#106) is denied; plaintiffs' motion for partial summary judgment (#102) is denied; defendants' motions to strike (#116, #121) are moot; defendant Mecca's motion for summary judgment (#66) is granted; and defendant Credit Bureau of Josephine County's motion for summary judgment (#70) is denied as to Count Three (15 U.S.C. § 1692e) and granted as to all other counts.

IT IS SO ORDERED.

---

[7] In their response brief, plaintiffs refer to certain deposition testimony relating to their reactions to the process server, (Pls. Resp. at 17-18), but that evidence is not included in the record.

DATED this ___5___ day of February, 2010.

_____
UNITED STATES MAGISTRATE JUDGE